In the Matter of the Final Accounting of NOAH SELLECK, as Executor, etc.

An executor has no authority to credit in his accounts items not constitut- ing a legal charge against the fund in his hands.

·Credits, therefore, for payment of taxes not a lien on property of the testator at the time of his death, or on property not owned by the testator, and credits for payments made by the executor, by request of heirs, and ˙for which the estate was not liable, are improper and may not be allowed upon settlement of the executor's accounts.

˙Upon settlement of the accounts of an executor, the surrogate disallowed a credit of $62.50, claimed to have been paid to a surrogate many years previously. The surrogate disallowed it because there was neither a voucher nor a sufficient ˙explanation for the payment. The General Term of the Supreme Court allowed the credit. *Held*, error.

'The executor, under a power of sale contained in the will, sold a lot to D. No debit for the purchase-money was made in his account. The executor explained that the payment was made by withholding from D. moneys coming to him from the trust estate. *Held*, that it should have been entered in the accounts; and that he was properly charged therewith by the surrogate.

˙Under the Code of Civil Procedure (§§ 2557–2559, 2570), it is within the dis- cretion of a surrogate, upon the settlement of the accounts of an executor or testamentary trustee to award costs "payable by the party personally or out of the estate or fund as justice requires;" and, while the exercise of this discretion is so qualified by the words "as justice requires" as to authorize the interposition of the General Term, where there has been an

abuse of discretion and a violation of justice, it has no other power of review.

When the General Term reverses a surrogate's decree, imposing costs upon an executor or trustee personally, it must appear in the order of reversal that the ground therefor was the abuse of discretion by the surrogate; in the absence of this statement, the order is not sustainable.

While, when upon a final accounting of a testamentary trustee, it appears that the annual income of the trust estate was distributed to the beneficiaries, the trustee may be allowed full commissions annually, although he did not account annually, the fact that the income was received and distributed monthly, does not authorize the trustee to charge full commissions monthly

An executor was charged with moneys received from heirs to pay a mortgage upon the testator's real estate. *Held,* in the absence of evidence that the executor withheld or appropriated the money, he was not properly charged with interest thereon.

(Argued October 12, 1888; decided November 27, 1888.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, made July 23, 1886, which reversed two decrees of the surrogate of the county of Richmond, one on final settlement of the accounts of Noah Selleck as executor of the will of David Decker; the other, settling the accounts of said Selleck as trustee under said will, and which directed said surrogate to settle and adjust the accounts as therein prescribed.

The facts, so far as material, are stated in the opinion.

*William B. Hornblower* for appellant. As the order of General Term does not state that the reversal was upon questions of fact, it must, therefore, be deemed to have been upon questions of law only. (*Foster* v. *Persch,* 68 N. Y. 400.) The first and most imperative duty of a trustee is to keep correct books of account, in which everything relating to the estate shall be set down in so clear and distinct a manner that any of the beneficiaries could, at any moment, by a simple inspection, get an accurate idea of the condition of the estate. (Lewin on Trusts [1885, Eng. ed.] 993, § 27 ; Perry on Trusts, § 821; 2 Story Eq. Jur. § 1275; 3 Williams on Executors [6th Am. ed.] 2156.) The award of costs against Mr. Selleck,.

personally, was in the discretion of the surrogate, and of the surrogate alone. (Code, §§ 2557, 2558; 2 R. S. 67, § 62; *Marvin* v. *Marvin*, 11 Abb. Pr. [N. S.] 97; *In re Collamer*, 5 St. Rep. 196, 199, 200.)

*William R. Baird* for respondent. The surrogate erred in striking out of the executor's account the item of two dollars, February 15, 1871, for traveling expenses. (Code of Civ. Pro. § 2734; *Elliot* v. *Lewis*, 3 Edw. Ch. 40.) Even as contended by the heirs, had the executor's system of calculating been erroneous, they having acquiesced in it for fourteen years, and understood his system of charges, cannot now be heard to say that he improperly retained them, or question his right to do so, or their amount. (*Hancox* v. *Meeker*, 95 N. Y. 528; *Hurlburt* v. *Durant*, 88 id. 120; *Embury* v. *Connor*, 3 id. 522; *Clemens* v. *Clemens*, 37 id. 74; *Bloomer* v. *Sturgis*, 58 id. 176; *Jordan* v. *Van Epps*, 85 id. 436; *Pray* v. *Hegeman*, 98 id. 351; *Gates* v. *Preston*, 41 id. 113; *Newton* v. *Houck*, 48 id. 676: *Demarest* v. *Darg*, 32 id. 281.) The contestants could not properly object to the payments made by the trustee to them, to the rate of his commissions, or the amount and number of his disbursements; the entire question being *res adjudicata* previous to the initiation of those accountings. (*Gates* v. *Preston*, 41 N. Y. 113; *Newton* v. *Houck*, 48 id. 676; *Demarest* v. *Darg*, 32 id. 381; *Sheldon* v. *Edwards*, 35 id. 287; *Le Guen* v. *Governeur*, 1 Johns. Cas. 436; *Brown* v. *Mayor, etc.*, 66 N. Y. 391; *Leavitt* v. *Walcott*, 95 id. 212; Code Civ. Pro. § 1209.) As the contestants filed no exceptions to the referee's report as to the executor's accounts, and as they moved to confirm the report and did not except to it, they are bound by it as a judicial admission. (*Ward* v. *Craig*, 87 N. Y. 551; *Glacius* v. *Fogel*, 88 id. 435; *Norton* v. *Woods*, 22 Wend. 522; *White* v. *Merritt*, 7 N. Y. 352; *Gates* v. *Preston*, 41 id. 113; *Demarest* v. *Darg*, 32 id. 281.) The executor and trustee was properly awarded costs, to be paid out of the estate by the General Term. (*Lawrence* v. *Lindsey*, 70 N. Y. 566; *Schell* v. *Hewitt*, 1

Dem. 249; *Murtha* v. *Curley*, 92 N. Y. 453; Code Civ. Pro. § 2557.

GRAY J., From a careful consideration of the questions brought up by this appeal, we have been led to conclude that the order of the General Term, reversing the decrees of the surrogate upon these accountings, cannot be sustained.

An expression of the views, which have influenced this conclusion, seems to be called for in some instances in this record.

In the accounts filed by the executor, the surrogate disallowed certain items, amounting in the aggregate to the sum of $477.01 and commissions of $146.57. The items so disallowed related to the payments of taxes. The reasons assigned by the General Term for restoring these items to the account were that the heirs received the benefit, and they are the same persons who take the benefit under the decree. This reasoning is not only unsatisfactory; but it is evident that they have misapprehended the grounds upon which the surrogate's decree was based. It appears that, in one or two instances, the payments of taxes covered some of the real estate of which testator died seized; but that there was no proof given to show what portion of the tax was in fact imposed upon that real estate, and being unable to separate it from the tax imposed upon the real estate owned by other persons, the entire charge in such instances was disallowed.

As to other payments of taxes the surrogate disallowed them, for the reason that the real estate was owned by the heirs, and there was no warrant for their payment by the executor. In addition, the proof showed, as the report states, that though the amounts in particular instances were repaid by the heirs, the executor did not credit the estate in account with their receipt. I cannot find any warrant in law for the entry by an executor in his accounts of items not constituting a legal charge against the fund in his hands. Payment of taxes not a lien on property of the testator, at the time of his death, or of taxes upon property not owned by the testator, is without reason or authority in the statute. Payments made

by an executor by request of heirs, for which the estate was not liable, constitute a personal transaction between them, and they have no more place in his accounts than any other dealings which he may have with them, in which he has resort to the funds of the estate.   His duties are clearly defined by statute, and there is no legal warrant for his departure therefrom, because of the requests of the heirs or next of kin.

Other instances of disallowed payments of taxes are clearly explained in the admissions of the executor, or in the failure of any proof of their having been liens on property of the estate.   From the disallowance of these items in the executor's accounts, the change in the allowance of commissions naturally followed as made by the surrogate.   The General Term added to the credit side of the account an item of $62.50 as " surrogate's bill."   This was clearly wrong.   The executor claimed to be allowed the item, as a payment made many years previously to a surrogate.   The surrogate here disallowed it because there was neither a voucher nor a sufficient explanation for the payment.   They were clearly right in so holding, and the General Term without justification in adding it as a credit.

The surrogate added to the executor's receipts items, aggregating the sum of $263.25, all of which, except the sum of five dollars, the General Term decree refused to sustain.   The few words in the opinion of the General Term, in respect to the matter, are insufficient, either as explanation or reasoning. The surrogate added the items, because the executor's testimony established them as credits to the estate.   In respect of the sale of a lot to John Decker for $200 (part of this sum of $263.25), the executor sold it as such, under the power in the will to pay debts.   He says the payment was made by withholding moneys coming to Decker from the trust estate ; but that is no reason for not entering it in the executor's account as a credit to the estate.

Our review of the questions arising on the accounting of the executor leads us to the conclusion that the surrogate committed no error in settling the same.   By the decree, the costs and disbursements of the accounting, amounting to $1,525.57,

were cast upon the executor personally, for reasons stated in the referee's opinion, and which had reference to the proofs as to his conduct and to his responsibility for the necessity and expense of a long reference.

The order of the General Term, with reference to the payment of the costs below, uses this language : " That he should be further allowed   *   *   *   his costs, allowances and disbursements upon the proceedings herein heretofore had, to be taxed and to be deducted from the net balance so found as above remaining in his hands."   We must assume, and counsel agreed to that effect, that the reversal of the surrogate's decrees, with the above direction in the order, is a reversal of that part of his decree which directs the executor to pay personally the costs and disbursements, and is a direction that they be paid out of the estate.

We think this action of the General Term is clearly an error, and that it is unwarranted by statute.   By section 2557 of the Code of Civil Procedure, " costs awarded by a decree may be made payable by the party personally, or out of the estate or fund, as justice requires," and by section 2558, " the award of costs in a decree is in the discretion of the surrogate ; " except in cases of which this is not one.   By section 2570, " an appeal to the Supreme Court may be taken from a decree of a Surrogate's Court, or from an order affecting a substantial right," etc.   By section 2589, " the appellate court may award to the successful party the costs of 'the appeal ; or it may direct that they abide the event of a new trial * * * In either case the costs may be made payable out of the estate or fund, as directed by the appellate court," etc. Is there any authority for the Supreme Court to reverse the surrogate in the exercise of his discretion under these statutory provisions ?   Its authority is confined to matters where the substantial rights of a party are affected ; but that is not a substantial right which the party cannot claim *ex debito justitiæ*, or which is dependent upon the favor or discretion of the surrogate.

SICKELS — VOL. LXVI.   37

Is there any authority for the Supreme Court to award, or to direct as to the payment of costs, as it has undertaken to do in this case?

The only authority for an award of costs is in the section quoted from above; but its provisions relate to the costs of the appeal, and they are left likewise to the discretion of that particular court. I think, however, that we may properly hold that the exercise of discretion by the surrogate is somewhat qualified by the words in section 2557 "as justice requires," and that the presence of these words would authorize the interposition of an appellate court, where there had been an abuse of discretion and a violation of justice. Broad as the language of the sections is, I think the legislature should not be deemed to have intended that there should be no redress in cases of an abuse of discretion by the surrogate, and that that view finds support in the words quoted. But where the appellate court undertakes to act in review of that discretion, and to reverse its exercise by the other court, it should and it must appear in the order or judgment that the ground of reversal was the abuse of discretion by the surrogate. In this case the order does not state, in any portion, that the General Term acted upon any such ground. As the surrogate was vested with discretion in the matter, he could commit no error of law with respect to the award, and the General Term, except on the ground stated, is without power to interfere. Judge GROVER, in his opinion in *Marvin* v. *Marvin* (11 Abb. Pr. [N. S.] 97–101), in referring to the statutory provision then existing, with respect to the surrogate's power to determine the question as to the payment of costs and expenses in probate cases, and as to whether they should be paid by the executor personally or out of the estate, considered that they "vested him with a discretion therein which is not made reviewable by any other court." If such a construction was deemed proper in that case, under the law as it stood, how much more is it demanded in the present case.

In the accounting of Mr. Selleck, as testamentary trustee, some questions arise. Under testator's will he directed that

a house and lot in New York city should be held by his executor, and the net income from the property distributed to and among his children, in equal portions, during the lifetime of a daughter, and that upon her death the trust property should be sold, and the proceeds divided among his children, as provided for the remainder of the estate.  The testator died in January, 1870 ; the will was admitted to probate, and, in May, 1870, letters testamentary issued to the executor. The daughter, during whose life the realty was to be held, died in 1883, and the property thereupon was sold for $20,200. In his accounts as trustee, Mr. Selleck deducted his commissions, at the rate of five per cent, from the monthly income of the trust property, and upon the sum of $20,200, the proceeds of the sale, he estimated his commissions at statutory rates.    The surrogate allowed him commissions at the statutory rates upon the aggregate amount of the income received from the commencement of the trust, added to the proceeds of the sale ; but the General Term reversed him in that respect, and allowed the trustee the commissions as he had estimated them. The counsel for respondent defends his client's right to the commissions, as claimed by him, because, in the first place, the question of the rate was *res adjudicata ;* in the next place, that he was entitled to them at that rate as matter of law, and, finally, because the heirs are now estopped to question that rate.

The action of *Selleck* v. *Decker,* wherein the judgment is relied upon as *res adjudicata* on this head, was brought by Selleck, as executor, against all the children and descendants of testator, to obtain a judicial construction of the will, in respect of the trust property, and of his duties with respect to conflicting claims to the income, made by the immediate children of testator and the representatives of a deceased child.   In a statement filed by the executor, showing receipts and disbursements of trust income from February 1, 1878, to March, 1879, appears an item of executor's commissions, which does not state any rate, and which, by mental calculation, is found to be just five per cent upon the amount of rents received within that time.

We do not think the judgment in that action is *res adjudicata* on the question of the trustee's commissions. The rule is well settled, by repeated decisions, that a judgment is conclusive upon the parties, as to questions litigated and decided, whether coming directly in question, or necessarily involved in the controversy; but, in the action referred to, the only question raised by the complaint, and the only issue which was raised by the answer of the representatives of the deceased child (the other defendants not having appeared in the action), was the construction of testator's will as to what parties were entitled to participate as beneficiaries in the trust created therein. The object of the bill filed was to determine that question, and that was and could only be the sole matter of controversy. We think the decision did not prevent any of the parties interested in the trustee's administration of his trust and his accounting, from contesting the accounts by a direct proceeding before the surrogate, in the manner pointed out by statute.

In *Mason's Executors v. Alston* (5 Seld. 28), WILLARD, J., held that the decision of a previous action by James Mason against the executors of his father's will and others interested in that estate, to have the provisions declared inoperative and void and the estate distributed as if testator had died intestate, constituted no bar to the parties to that suit from contesting the validity of the will by a direct proceeding before the surrogate. His reasoning was that there was no issue made upon the point of the *factum* or legal execution of the will, and it could not have been a material issue in that action. That process of reasoning we can adopt here. He says "one of the principles, in relation to an estoppel, is that it must be certain to every intent and not be taken by argument or inference."

As to the trustee's next ground, that he was entitled to the rate claimed as matter of law, he urges that as he was directed by the will to pay over the income, as soon as it was received, the commissions should be deducted from the payments thus made; and as the income came in monthly receipts of rent and was under $1,000, the rate was five per cent.

We cannot recognize the propriety of such a rule as is here contended for. In *Matter of Mason* (98 N. Y. 527), this court held that in cases where the trustees receive the annual income and render an account thereof, and pay over the balance to the beneficiary each year, there is no occasion for a settlement before the court, and the law does not require the filing of annual accounts. In such a case, upon a final accounting, the trustee may claim and be allowed full commissions on the annual income of the trust estate. He may deduct his compensation from the income annually received before paying it over. The construction in that case was most liberal towards the trustee. We do not think that the fact that the annual income is received in the form of monthly rents, and distributed by the trustee, should be allowed to enlarge the rule of compensation.

Under the circumstances, we are of the opinion that in a case where, upon a final accounting, it appears that the annual income of the trust estate was distributed to the beneficiaries, the trustee may be allowed to claim for full commissions annually. He might have accounted annually to the court and have received his commissions, and the allowance may, upon the final accounting, be made upon the theory of such an annual accounting. While the conduct of this trustee, in respect of his administration, is not such as to very strongly warrant an extension of the benefits of this rule to him, we have, on the whole, decided that it should be done. We see nothing in the claim of his counsel that the heirs are estopped from questioning the rate. The decision below satisfies us on that point.

The account of the trustee, as stated by the surrogate in his decree, should be modified in some particulars of interest charges made against the trustee. After charging him with the gross amount of income received, and with the proceeds of sale of the New York property, he charges him with the sum of $1,500 received from ten of the heirs towards the payment of the Burkhead mortgage. The referee thought, that as fourteen conveyances were made, covering the entire

parcel of land, the trustee should be charged with the sum of $2,100 ; but the surrogate modified the report in that respect, and we think the modification was right. The charge of interest upon the sum of $1,500, we think, was error, as no grounds appear warranting it. We cannot see that the trustee, in fact, withheld the money or appropriated it, and the interest item of $1,419.92, charged by the surrogate, should be stricken out.

The surrogate's decree taxes the costs and disbursements of the counsel for the trustee on the accounting; but directs them to be paid by the trustee personally, and not out of the trust fund. That direction seems to us to have been within the discretionary power of the surrogate, and, therefore, for reasons hereinbefore given, was not reviewable by the General Term.

The other questions which have been presented, in the briefs and arguments of counsel, have been considered, but do not call for discussion. We have reached the conclusion that the order of the General Term, so far as it reverses the decree of the surrogate upon the accounting of the executor, should be reversed and that the decree of the surrogate should be affirmed; and, in so far as it reverses the surrogate's decree upon the accounting of the trustee, it should also be reversed and the matter remitted to the Surrogate's Court, to be there proceeded with in conformity with the decree of the surrogate, as modified by this opinion.

Costs of the appeals in the Supreme Court and in this court are awarded to the appellants, to be paid out of the fund in the trustee's hands.

All concur, except RUGER, Ch. J., and EARL, J., not voting.
Ordered accordingly.