IN RE ESTATE OF MORTIMER HAYES BOUTELLE.
FRED W. BOUTELLE AND ANOTHER v. HARRIETT M.
RENSHAW AND ANOTHER.[1]

July 14, 1944.

No. 33,765.

[1]Reported in 15 N. W. (2d) 506.

*Best, Flanagan, Rogers, Lewis & Simonet* and *Bergmann Richards,* for appellants.

*George R. Kodadek,* for respondent Harriett M. Renshaw, individually.

*A. H. David,* for respondent Harriett M. Renshaw as executrix, and as attorney *pro se.*

JULIUS J. OLSON, JUSTICE.

This appeal is from an order denying appellants' alternative motion for amended findings or a new trial.

Appellants are trustees of the trust created under the will of Mortimer Hayes Boutelle. Respondents, Harriett M. Renshaw and A. H. David, are respectively the executrix and her attorney, testator having, under paragraph 12 of his will, directed:

"I designate and appoint Harriett M. Renshaw as the sole

executrix of my estate, and that she shall qualify as such executrix without the requirement of bond. I request that such executrix shall appoint my associate, Adrian H. David, as her attorney for the purpose of administering my estate."

The cause was originally heard by the probate court upon the petition of executrix to allow her final account and for the issuance of a final decree of distribution, she having fully performed her official duties. Certain objections were made by appellants, but only one question remains here, and this also was the principal question before the probate court and the district court on appeal. The probate court approved the account and issued the decree.

In their brief, appellants have paid testator's name and fame this well-deserved tribute:

"The testator, Mortimer H. Boutelle, who died on July 16, 1941, at the age of 74 years, was a lawyer of outstanding ability and a leading member of the bar of this state. He had an unusually fine vocabulary and command of English. In the preparation of written instruments he always had just the right word. While in some instances he might be thought to be almost verbose, yet when one read a document he had drawn, even though it was perhaps longer than a similar document some other lawyer would draw, one would recognize exactly what it was he was *trying to say.* [Italics supplied.]

"He was a man of more than average pride. His pride in his work, his home, his family, his position and his professional standing was quite obvious."

Paragraph seven of the will, which furnishes the basis for this appeal, reads:

"I give, bequeath and devise to Harriett M. Renshaw all books of account, which have been maintained and employed in the carrying on and conduct of my law business in the city of Minneapolis, Minnesota."

The will was executed December 2, 1937, more than three and one-half years before testator's death. No change was made by

codicil or otherwise, although he continued his professional activities until shortly before his death. His sole heir at law is his unmarried son, appellant Fred W. Boutelle, now past 50 years of age. Testator's wife died in 1925. His only other child, a daughter, died in 1936.

The probate court construed paragraph seven to be a bequest to Miss Renshaw of both the books of account and the accounts therein stated, holding that—

"said provision of the will" bequeathed to her "all amounts due and owing to the deceased including any and all debts due decedent for legal services and disbursements * * * due or to become due * * * as evidenced by and included in said books of account as well as the books of account themselves."

On appeal, the district court, after trial *de novo*, made extensive findings, the important one here being No. VII, which, so far as here material, reads:

"That it was the intention of the decedent to give and bequeath to Harriett M. Renshaw all books of account which had been maintained in the carrying on of decedent's law business in the city of Minneapolis, Minnesota, including any and all debts due decedent for legal services and disbursements, and decedent's interest in uncollected fees due, or to become due, for legal services rendered in matters not yet concluded, as evidenced by and included in said books of account, * * *."

Consequently, in its conclusions of law, it determined that the order of the probate court settling and allowing the final account of executrix and the decree of distribution was "in all things ratified, affirmed and approved."

What appellants here seek "is a reversal of the order appealed from with directions to enter judgment that by his Last Will and Testament, the testator gave, bequeathed and devised to the appellant trustees all debts and receivables due or to become due him for legal services and disbursements." Their exact position is stated in their brief in this form:

"* * * We believe it is undisputed that testator intended to give her the *books* of account. *The only question is whether he intended to give her the accounts as well."* (Italics supplied.)

The gist of their argument is that testator—

"used the words 'books of account' to describe, *not his book accounts, but his account books,"* and that this manifestly appears "from the fact that he qualified the words 'books of account' by specifying that they were those *'which have been maintained and employed in the carrying on and conduct of my law business.'"* (Italics supplied by appellants.)

They cite many cases holding, in effect, that to arrive at—

"what was apparently or presumably" in testator's mind at the time of making his will "we must look first to the context of the will, to the language which the testator used * * * as the law presumes that the language used expresses the testator's intent. * * * In examining that language we must take into consideration the fact that it was drawn by an experienced lawyer and must give to the words used their usual and accepted meanings without enlargement and without restriction * * * and when particular or technical terms are used particular or technical interpretation or construction follows as of course in the absence of all clear intent to the contrary. * * * We must also keep in mind that no words used by the testator should be cast aside as meaningless, but that effect must be given if possible to every word and provision."

The quoted language is taken from In re Estate of Barrett, 141 Misc. 637, 638, 253 N. Y. S. 658, 660, upon which the trustees heavily rely. We find no fault with the court's statements there, since our own cases are in general accord. *Cf.,* for example, In re Estate of Norman, 209 Minn. 19, 26, 295 N. W. 63, 66; In re Trust Under Will of Holden, 207 Minn. 211, 218, 291 N. W. 104, 108. Our cases on this subject are cited and annotated in 6 Dunnell, Dig. & Supp. § 10257.

What was testator *trying to say* when he used the words "I give, bequeath and devise * * * all *books of account"?* Did he intend

to give Miss Renshaw a legacy, or only so many pages of useless and worthless paper, since that is all the books could be if she were to be limited to their physical custody, without more. Were we to construe the language to conform to the trustees' claim, who would or could be a beneficiary under the will? The one named could receive no more than an empty shell. Such a testamentary gift would be but "a teasing illusion like a munificent bequest in a pauper's will" (from concurring opinion of Mr. Justice Jackson in Edwards v. California, 314 U. S. 160, 186, 62 S. Ct. 164, 172, 86 L. ed. 119, 132).

Surely, in the situation we have here, it just does not lie within the limits of reason for anyone to suppose that a man of testator's caliber would so cruelly treat his long-time, efficient office manager, whom he highly regarded. "For upwards of 30 years," appellants admit, Miss Renshaw "did his shorthand, typewriting, bookkeeping, hired the help, paid their salaries and looked after everything—all of the details of the office." The "amount of her compensation was on something of a contingent basis." That he considered her worthy of trust and confidence is evidenced by the fact that testator appointed her sole executrix of his will without the requirement of bond.

We think testator's "dominant intention to be gathered from the instrument as a whole" was to leave Miss Renshaw a legacy, not a worthless token. The quoted words are taken from Eaton v. Brown, 193 U. S. 411, 412, 24 S. Ct. 487, 488, 48 L. ed. 730, 732. In that case testatrix prepared a holographic will, which, so far as here material, read:

"Washington, D. C. Aug. 31/001.

"I am going on a Journey and may, not ever return. And if I do not, this is my last request. [We omit here the description of the property willed and the names of the beneficiaries.] * * * All I have is my one [sic] hard earnings and I propose to leave it to whome I please. Caroline Holley."

Testatrix there went on her journey but returned to Washington, where she died the following December. The will was offered for

probate, but this was denied "upon the ground that the will was conditioned upon an event which did not come to pass." The United States Supreme Court, to which the case was appealed, in passing upon this issue, said (193 U. S. 413, 24 S. Ct. 487, 48 L. ed. 731):

"* * * The only question therefore is whether the instrument is void because of the return of the deceased from her contemplated journey. As to this, it cannot be disputed that grammatically and literally the words 'if I do not' [return] are the condition of the whole 'last request.' There is no doubt either of the danger in going beyond the literal and grammatical meaning of the words. The English courts are especially and wisely careful not to substitute a lively imagination of what a testatrix would have said if her attention had been directed to a particular point for what she has said in fact. On the other hand, to a certain extent, not to be exactly defined, but depending on judgment and tact, the primary import of isolated words may be held to be modified and controlled by the dominant intention to be gathered from the instrument as a whole. Bearing these opposing considerations in mind, the court is of the opinion that the will should be admitted to proof.

"* * * This last sentence of self-justification evidently is correlated to and imports an unqualified disposition of property, not a disposition having reference to a special state of facts by which alone it is justified and to which it is confined."

To the same effect is our own case of Davis v. Hancock, 95 Minn. 340, 104 N. W. 299; and in one of our late cases, In re Trusteeship Under Will of Ordean, 195 Minn. 120, 125, 261 N. W. 706, 708, we said:

" '* * * One of the highest duties resting upon a court is to carry out the intentions of a testator expressed in valid provisions not repugnant to well-settled principles of public policy. * * * What is sought is not the meaning of the words alone, or the meaning of the writer alone, but the meaning of the words as used by the writer.' * * * It is 'the dominant intention to be gathered from

*the instrument as a whole,' not isolated words, that should guide us.* And we are required to place a reasonable and sensible construction upon the language used; hence 'canons of construction are only aids for ascertaining testamentary intent and are to be followed only so far as they accomplish that end.' " (Italics supplied.)

We hold that the legacy to Miss Renshaw was correctly determined by the trial court as one carrying with the bequest of the books of account the accounts evidenced by such books.

Order affirmed.

STREISSGUTH, JUSTICE (dissenting).

Because I feel that the majority has gone out of bounds in the field of judicial interpretation of wills and trespassed upon the forbidden field of making wills, I must respectfully dissent from its opinion.

The will under consideration was not prepared by an unskilled layman, unpracticed in the art of will-drafting and unimpressed with the importance of exactness and accuracy in testamentary language, but by a lawyer of recognized ability, capable of precision and exactness in the use of words. This circumstance is to my mind controlling and distinguishes this case from those cited in the majority opinion. 2 Page, Wills (Lifetime ed.) § 921; In re Estate of Barrett, 141 Misc. 637, 253 N. Y. S. 658.

To use the words of Mr. Justice Olson, in a recent decision:

"We have here plain language carefully chosen by one professionally capable of giving the words chosen by him the exact thought meant to be conveyed. We are not to surmise, conjecture, or suppose something else. We should accept them as they are." Radintz v. N. W. Nat. B. & T. Co. 207 Minn. 56, 60, 289 N. W. 777,.779.

Also important here is the fact that testator was the draftsman of his own will. Any chance of error in conveying his exact wishes to the draftsman was thereby entirely eliminated. In re Will of Northup, 92 App. Div. 5, 87 N. Y. S. 318.

The term "books of account" is not a technical one. It should be construed in its ordinary and popular sense. 6 Dunnell, Dig. &

Supp. § 10263; There is no occasion here to refer to surrounding circumstances to determine testator's meaning when he used it. The term is in common use and has a precise meaning. It applies exclusively to tangibles, not to intangibles; it refers specifically to choses in action, not to choses in possession. It cannot include both. "Not to mean one thing is to mean nothing. Terms which wobble are worse than useless." Piper & Ward, The Fields and Methods of Knowledge, p. 175. By refusing to give "books of account" the one and only meaning which that term possesses wherever and whenever used, this court is assuming a forbidden role. It is putting words in a will, which, for reasons best known to himself, testator omitted to put there. This is directly contrary to the rule that—

"The court cannot give effect to an unexpressed intention of the testator nor add a term to the will, or modify the language used in order to make what seems a more proper or reasonable devise, where there is no ambiguity in the language used." In re Estate of Convey, 177 Minn. 266, 269, 225 N. W. 17, 18.

Testator's legacy of "books of account," without including the accounts, may seem to us "a worthless token," yet it must be remembered that Miss Renshaw was also appointed executrix of the will and given a liberal legacy ($2,500) for her anticipated services as such. Testator may have had his own personal and peculiar reasons for giving her "all books of account, which have been maintained and employed" in his law business, just as he undoubtedly had for giving his associate "all the files and case records." It might have been for the purpose of keeping the information contained in the account books confidential, after the accounts themselves had been collected by her as executrix. It is entirely probable that, notwithstanding his gratitude to Miss Renshaw for her many years of faithful service, testator considered that his first obligation was to his son, for whom he had great affection. But whatever his reasons, the fact remains that all he bequeathed Miss Renshaw were the "books of account," and this court, I feel, is without authority to give her more.

In In re Will of Northup, 92 App. Div. 5, 13, 87 N. Y. S. 318, 324, where the court held that a lawyer's bequest of "all my law business, law books, papers, safe, bookcases and office furniture, and all property pertaining to my business" did not include outstanding accounts receivable for legal services, it was said:

"* * * it is impossible for the legatee * * * successfully to claim them [receivables for legal services], except on the theory that it was a devise by implication. It is said, however, that a gift by implication will only be adopted where the probability of such intention is so apparent that the contrary cannot be supposed to exist. (Post v. Hover, 33 N. Y. 593.) * * * There is nothing to indicate a reason for any purpose in the mind of the testator to devise choses in action by language which describes choses in possession. The last will and testament of the deceased Northup was prepared by himself, a lawyer of large experience and it may be presumed that he knew the effect generally of omitting to describe property the subject of devise."

Applying the well-accepted rules to which I have referred, I can reach no other conclusion than that Miss Renshaw is not entitled to testator's book accounts in addition to his account books.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.