jected to by defendant's counsel, on the ground that plaintiff concededly was not a duly licensed or registered plumber, and had never received a certificate of competency from the examining board of plumbers, as required by section 45 of article 4 of the General City Law (Consol. Laws 1909, c. 21), a re-enactment of chapter 327, art. 3, Laws 1900. This objection was overruled, and an exception taken by defendant.

At the close of the case, defendant moved to strike out all of the testimony in support of the plaintiff's several claims for plumbing, on the ground that the contracts were illegal, and plaintiff could not maintain an action based on such contracts. This motion was denied.

It has been repeatedly held that an action cannot be maintained on contracts of this character, where the contractor is not a duly licensed or registered plumber, or has not obtained a certificate of competency, as required by the statute. See Wexler v. Rust, 144 App. Div. 296, 128 N. Y. Supp. 977; Schnaier & Co. v. Grigsby, 132 App. Div. 854, 117 N. Y. Supp. 455, affirmed on opinion below 199 N. Y. 577, 93 N. E. 1125; Bronold v. Engler, 194 N. Y. 323, 87 N. E. 427, 21 L. R. A. (N. S.) 176.

The judgment must therefore be modified, by reducing it to $212.25 and appropriate costs in the court below, and, as so modified, affirmed, without costs of appeal to either party. All concur.

---

(149 App. Div. 347.)

In re LOWE et al.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1912.)

1. WILLS (§ 573*)—CONSTRUCTION—INTENTION OF TESTATOR.

Where a testatrix received a printing plant from her husband as a going concern, and with it the accounts and money on hand, and during the succeeding 20 months continued the business, keeping its accounts and funds separate from her other property, a provision of her will which passed the establishment to her daughter without mentioning moneys on hand or accounts receivable must have intended to secure to the business its working capital, and it will be construed to pass such moneys and accounts to the daughter rather than to the residuary legatees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1246–1251; Dec. Dig. § 573.*]

2. WILLS (§ 573*)—CONSTRUCTION—INTENTION OF TESTATOR.

Where a testatrix had an income in addition to that from a printing and bindery plant, and the will gave her daughter the printing establishment, household furniture, jewelry, horses, carriages, and stable equipment, and a use of the dwelling house during life, a bequest thereafter of a definite sum of money must have been intended as a provision against a failure of the earning capacity of the printing plant and not to take the place of its money and accounts receivable, as a working capital, so as to pass such moneys and accounts to the residuary legatees rather than to the daughter.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1246–1251; Dec. Dig. § 573.*]

3. WILLS (§ 573*)—CONSTRUCTION—WORDS USED.

Where a testatrix devised and bequeathed to her daughter her "printing office and bindery, together with all the presses, bindery machinery,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

type, paper on hand, office furniture and equipment of every nature connected with said business," the naming of the particular physical items of the plant was not a restriction, but the words are merely of specification, and would not qualify the clearly expressed intention of the testatrix to pass the entire business, just as she had regarded it and treated it in her lifetime, so that the moneys on hand and accounts receivable passed to her daughter, rather than to the residuary legatees under the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1246–1251; Dec. Dig. § 573.*]

McLennan, P. J., and Foote, J., dissenting.

Appeal from Surrogate's Court, Erie County.

Objections to the Judicial Settlement of the accounts of Nathan J. Lowe and another, as executors of the will of Sarah J. Clement. From a decree in favor of objectors (132 N. Y. Supp. 478), Helen Springer, a legatee, appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Vernon Cole, for appellant.

Simon Fleischmann and George S. Potter, for respondents.

SPRING, J. Mrs. Sarah J. Clement, a resident of Buffalo, died October 23, 1908, leaving a last will and testament, which was soon thereafter admitted to probate and letters testamentary issued to the executors named therein. She left one daughter, her only child or descendant, the appellant, and nephews and nieces.

By the second provision of her will she provided:

"I give, devise and bequeath to my daughter, Helen Springer, my printing office and bindery, together with all the presses, bindery machinery, type, paper on hand, office furniture and equipment of every nature connected with said business."

She also bequeathed to the daughter her household furniture, jewelry, horses, carriages, and stable equipment, the use during her natural life of a dwelling house occupied by the testatrix, and the sum of $5,000 absolutely. She disposed of considerable of the residue of her property by general and specific legacies, some to relatives and some to friends, who were not related to her, and made the five nephews and nieces, who are the respondents, the residuary legatees and devisees.

The printing office and bindery had been organized and developed into a successful business by Mr. Clement, the husband of testatrix and the father of the daughter Helen, and who died in February, 1907, leaving the business to his widow, who conducted it along the same lines adopted by her husband until her death 20 months later. She had considerable other income-producing property, but the printing business, which had become profitable and extensive, she always kept separate and distinct. It was carried on in the name of her deceased husband as before his death, and the bank account connected with it was kept in the same name, so that at the time of her decease everything pertaining to it was readily ascertainable.

Her will was executed in April preceding her death. When she died, there was a large contract for printing almanacs which was practically completed, and a small quantity of the almanacs had been delivered, but no part of the purchase price had been paid. Within three months this contract was fully consummated, and over $11,000 paid to the executors. There were also due to the testatrix at the time of her death nearly $15,000 in open accounts, and from which has been gathered in by the executors nearly $12,000, and there were liabilities of about $7,000 growing out of the printing business, and about $500 in a bank to the credit of this account. The executors paid the debts from the accounts, and collected and tentatively transferred to the appellant all printed merchandise, accounts, and sums collected, and by the terms of the agreement of transfer the ownership of said property was to be determined by the Surrogate's Court of Erie county. The executors filed their account. Objections were interposed on behalf of the residuary legatees, who claimed they were entitled, by the provisions of the will, to all the accounts accruing from the bindery business and to the cash in banks, and that the debts arising from it should be paid out of the general fund in the custody of the executors, and the Surrogate's Court has held with them.

[1] In endeavoring to reach the intent of the testatrix in the disposition of the bindery business, it is important to keep in mind her comprehension of that industry as a going concern. She received with the plant the accounts and money on hand comprising its equipment and readily to be identified, and distinguished from the other property of her husband. She sedulously maintained this division, and transmitted the estate upon her decease so that the component parts of the business were easily to be ascertained. This successful business, it is fair to assume, she intended to transmit as a family heritage to her only child, to be carried on in her behalf without impairment of its efficiency or volume. To strip it of its bills receivable and the small amount of cash to its credit would destroy its working capital, and leave nothing connected with the business from which money could be derived to meet the weekly pay roll of $1,200 or over. It is unreasonable to believe that this mother designed to deprive her daughter of the fruits of this family patrimony so essential for its management and operation. We should not interpret the will in such a way as to make this serious invasion upon the live assets of the business, unless the language of the bequest clearly calls for that contruction. The only available assets were grouped in these due and accruing accounts and the small sum in cash. If the daughter was to carry on the business without these assets, she must add a considerable sum in cash to it, and practically commence anew without any working capital.

[2] But it is urged that the bequest of $5,000 was intended to compensate for this deprivation of the working capital from the business. In its place in the will this general bequest is not connected with the disposition of the bindery business. It is the last gift to the daughter, following the devise of the use of the family residence. The testatrix had an income independent of that accruing from the bindery plant. She did not permit her daughter to share in this investment property

·aside from the legacy mentioned. She probably realized the importance of a separate income to provide against failure in earning capacity of the business at any time, and possibly that reason may have induced this bequest of $5,000, if any explanation be required of a legacy by a mother to her only daughter and next of kin.

[3] Let us consider the provision itself. She first bequeaths the bindery business and plant in a broad bequest. She then adds, "together with all the presses," etc., not words of restriction, but specifying some of the chief tangible property in the plant. She did not intend to cut down or limit the large bequest, but to make clear that in addition to the plant and business in its entirety these principal items physically in the plant should unmistakably pass with the business. She then added the clause, going again from the definite to the general, "office furniture and equipment of every nature connected with said business." It seems to me she had in mind disposing of the entire business and plant as she had regarded and treated it. She did this by the sweeping transfer, and then, in order to identify a few of the big features of the movable property actually in the plant, she ·hitched them onto the general bequest.

The learned surrogate in his opinion relied, to some extent, upon In re Northrup, 92 App. Div. 5, 87 N. Y. Supp. 318. In that case the testator, a lawyer and who drew the will himself, by its third clause gave to his son, Dwight, "all my law business, law books, papers, safe, bookcases and office furniture, and all property pertaining to my business." At the time of his death the testator had claims due him for legal services, and the son asserted that the bequest included these items, and the court held otherwise. The son was not admitted to the bar at the time of the testator's death, and considerable importance in the opinion is attached to that fact, and also to the fact that the will was prepared by the testator, "a lawyer of large experience." The claims due a lawyer as compensation for services are not property pertaining to his business in the sense that bills receivable are to an industry requiring a large amount of money in its ordinary operation. In Matter of Reynolds, 124 N. Y. 388, 26 N. E. 954 (also cited by the court below), the testator devised and bequeathed to his son real property upon which were buildings, "including all the furniture and personal property in and upon the same, or in any manner connected therewith." The office of the testator upon this devised property contained a vault in which were stored money and securities, and the court held they did not pass to the son by the will. The provision is not similar to the one in controversy. The facts disclosed connected with the operation of the bindery business are illuminating in enabling us to arrive at the intention of the testatrix in disposing of that business to her daughter. It is not very satisfactory to cite authorities in construing uncertain clauses in a will. In one case the will may receive a restricted interpretation and in another a more liberal construction may be necessary to carry out the apparent purpose, which is the aim the courts seek to make effective.

I think the decree of the Surrogate's Court should be reversed, and the matter remitted to it for further proceedings in accordance with

this opinion, with costs of this appeal to the appellant to be paid from the general fund. So ordered. All concur, except McLENNAN, P. J., who dissents in an opinion in which FOOTE, J., concurs.

McLENNAN, P. J. (dissenting). I think the language used in the second paragraph of the will in question is plain and unambiguous, that such paragraph is not repugnant to or inconsistent with any of the other provisions of the will, and therefore that such language should be given its ordinary meaning and that the testatrix's intent respecting the bequest thereby made should be ascertained solely from the language so employed.

The paragraph of the will which is the subject of this controversy is as follows:

"Second: I give, devise and bequeath to my daughter, Helen Springer, my printing office and bindery, together with all the presses, bindery machinery, type, paper on hand, office furniture and equipment of every nature connected with said business; also all my household furniture, plate, books, pictures and other articles of use or ornament, including jewelry, together with the diamond rings formerly belonging to her father and one formerly belonging to Mrs. Tucker—except four diamond rings, one with emeralds to be disposed of as hereinafter mentioned. Also my horses and carriages and stable equipment of every kind. Also the use, possession and control for and during the term of her natural life, provided she pays the taxes and keeps premises in good repair, of my house, No. 605 W. Ferry Street, in the City of Buffalo, N. Y. Also the sum of five thousand dollars. Should the said premises, 605 W. Ferry Street, not be in my possession at the time of my death, my said daughter may have the use of any other one house, for life, under the same terms and conditions above mentioned, of which I may die seized. The said premises, 605 W. Ferry Street, or any other premises chosen by my said daughter, should said premises, 605 W. Ferry Street, not be in my possession at the time of my death, to go and form a part of my residuary estate on the death of my said daughter."

The learned surrogate interpreted the provision relating to the printing office and bindery of the decedent as only bequeathing to the appellant the property mentioned in such provision, viz., "my printing office and bindery, together with all the presses, bindery machinery, type, paper on hand, office furniture and equipment of every nature connected with said business," and that under such clause she took nothing else. The contention of the appellant is that because of such language and certain other provisions of the will the testatrix intended that the appellant should have, in addition to the printing office and bindery, presses, bindery machinery, type, paper on hand, office furniture, etc., all the bills receivable and any deposits in the bank which might exist to the credit of the printing business, which she claims should be awarded to her under the words, "office furniture and equipment of every nature connected with said business."

As before suggested, there is nothing uncertain or ambiguous about the provisions of the will to which attention has been called. The testatrix said, "I bequeath to my daughter certain property," all of which was specified, none of it having any connection with bills receivable or with a credit which might exist in favor of the testatrix in any bank. And still we are asked to believe that from the whole will it should be inferred that the intent of the testatrix was that all

her bills receivable, perchance involving her entire estate, should be turned over to her legatee, the appellant in this case.

The surrogate has charged the executors with the amount of such bills receivable, and has credited them with the amount of the indebtedness against the printing concern, which they have paid, but, as I understand the position of the appellant, it is that she is entitled to the surplus of such bills receivable after payment of the indebtedness of the concern, thereby reducing the interest of the residuary legatees.

In the prevailing opinion a good deal is said about the intention of the testatrix in making her will; among other things, that she, the mother, took the printing concern as a legacy from the father, and that she was anxious that her daughter should continue to own and control such business and that in order to do so successfully it was necessary that she should have capital, and that the $5,000 as a specific legacy willed to the daughter was not intended to supply such capital. I have very little notion as to what the testatrix intended to do in the premises. I do not know but that as matter of fact she was desirous that her daughter should close up the printing establishment, and go into some other business where she would not need any capital. I am only concerned with the proposition of law as to whether, when a testator or testatrix says, "I give and bequeath my printing office and the machinery connected therewith," and then adds, "and all office furniture and equipment," that language means that there is given to such legatee all the bills receivable accumulated in such business and all the money that may be deposited in the bank to the account of such business. That, as it seems to me, is precisely what the appellant in this case is contending for and what the prevailing opinion about to be handed down by this court means. A testator gives his printing office and bindery, together with all the presses, bindery machinery, type, paper on hand, office furniture, and equipment of every nature connected with said business. Can that mean that the legatee is to have all the bills receivable resulting from such business, which perchance may be ten times more valuable than all the things specified in such clause?

It will be observed that the testatrix does not bequeath the business to the appellant, but she bequeaths to her certain specified things, which are perfectly well known and understood if we give heed to the ordinary meaning of the English language; but it is said that somehow in this case "office furniture and equipment" should include and mean cash in the bank, and moneys which have become due and owing and payable to the testatrix during her lifetime. It seems to me that the proposition is not supported by good logic or authority. In Matter of L. I. L. & T. Co., 92 App. Div. 5, 87 N. Y. Supp. 65, a father willed to his son "all my law business, law books, papers, safe, bookcases and office furniture, and all property pertaining to my business." It was held unanimously that the fees which the father had earned in his lifetime and which had become valid obligations in favor of his estate did not pass to the son under such will. In Matter of Reynolds, 124 N. Y. 388, 26 N. E. 954, it appeared that the testator had given to his son certain real estate situate in the city of Rochester,

"including also East arcade (so-called), with all the lands, building and appurtenances thereunto belonging, or in any wise appertaining, and including all the furniture and personal property in and upon the same, or in any manner connected therewith, to have and to hold the same," etc.   The Court of Appeals held that the personal property, including cash and bonds, which was in a safe in and upon such property, did not pass to the legatee by such bequest.   That case contains an interesting review of the English cases, and I think that no case in the whole category can be found in which it is held or intimated that the words "office furniture and equipment of every nature con-' nected with said business" include bills receivable or deposits in the bank to the credit of such business.   Other cases cited by the learned counsel for the respondents are instructive, many of them referred to in the opinion of Judge Parker in the Reynolds Case, supra.   Brown v. Quintard, 177 N. Y. 84, 69 N. E. 225; Bunyan v. Pearson, 8 App. Div. 86, 40 N. Y. Supp. 429; Mann v. Mann, 14 Johns. 1, 7 Am. Dec. 416, affirming 1 Johns. Ch. 231; Fleming v. Brook, Schoale & Lefray, 318; Andrews v. Schoppe, 84 Me. 170, 24 Atl. 805.   Jarman on Wills, 751, collates a number of such authorities, and all, as it seems to me, are of the same tenor and effect, although the language may be quite different, that a testatrix who gives to a legatee a certain printing office and bindery together with all the presses, bindery machinery, type, paper on hand, office furniture and equipment of every nature connected with said business, does not intend thereby to bequeath bills receivable which may have been the result of years of accumulation and constitute perchance practically her entire estate. The language employed, given its ordinary interpretation, does not say or mean, as it seems to me, any such thing.

I conclude that the decree of the surrogate is right, and should be affirmed, with costs payable by the appellant.

FOOTE, J., concurs.