In the Matter of the Estate of MARGARET CURRIER, Deceased.

Surrogate's Court, New York County, November 12, 1930.

*Hardy & Hardy*, for the petitioner.

*Selig Edelman*, for Arthur B. Currier, residuary legatee and general guardian.

*Deafield, Thorne, Burleigh & Marsh*, for Lorena M. Campbell and Viola M. Lloyd, residuary legatees.

O'BRIEN, S. In this accounting proceeding two of the three residuary legatees, Lorena M. Campbell and Viola M. Lloyd, have filed an answer to the petition praying among other things that a decree be made adjudging that under the terms of the will of decedent they are entitled to an immediate distribution of all assets remaining in said residuary estate. The third residuary legatee, Arthur B. Currier, brother of the above-named legatees, filed an answer praying that a decree be made adjudging that under the provisions of said will "the residuary estate continue to be held by the executor." Testatrix died January 30, 1927. Her will was admitted to probate on March 29, 1927, and letters testamentary were issued on the same day. Said first mentioned two legatees have demanded that their legacies be paid in full to them. The executor seeks a judicial construction of the will. Said two legatees base their demand for distribution upon the following provisions of the will:

"*Eleventh.* All the rest, residue and remainder of my estate, of whatever character and wheresoever situated, together with any lapsed legacies, I give, devise and bequeath as follows:

"One-third (1/3rd) thereof to my son, Arthur B. Currier, of New York City, if living; and if not, to his issue, *per capita* and not *per stirpes;* and should my said son predecease me, leaving no issue him surviving, then his share is to be divided equally between his surviving sisters, or the issue of any deceased sister.

"One-third (1/3rd) thereof to my daughter, Lorena M. MacKeen, of St. Louis, Missouri, if living; and if not, to her issue, *per capita* and not *per stirpes;* and should my said daughter predecease me, leaving no issue her surviving, then her share is to be divided

equally between her surviving brother and sister, or the issue of her deceased brother and sister.

"One-third (1/3rd) thereof to my daughter, Viola M. Lloyd, of St. Louis, Missouri, if living; and if not, to her issue, *per capita* and not *per stirpes;* and should my said daughter predecease me, leaving no issue her surviving, then her share is to be divided equally between her surviving brother and sister, or the issue of her deceased brother and sister.

"*Twelfth.* I hereby nominate and appoint the Central Union Trust Company, of the City of New York, executor and trustee under this, my will, and direct that it be not required to give any bond or security as such; and I give to my executor and trustee power to sell, mortgage or lease any or all of my real estate, at such times and upon such security, and in such amounts, as it determines to be for the best interest of my estate.

"I direct and empower my executor and trustee above named, in its discretion, to hold any securities, which I might have at the time of my death, although they be not legal securities for the investment of trust funds in the State of New York. All investments made by my executor and trustee, after it shall qualify shall be restricted to such securities as may be authorized by the laws of the State of New York for the investment of trust funds.

"Inasmuch as the real estate, which I own in this city, is held in the name of the Belfont Realty Company, all the stock of which I own, except certain qualifying shares, it is my desire that only such portion of the real estate, held in said company, shall be sold as may be necessary to pay my just debts, and such legacies as I have above provided for, other than the one to my three children under the residuary clause herein. Believing that the real estate that I own through this Company is likely to appreciate in value in the years to come, it is my desire that as much of it as can be shall be held intact by my trustee for a period not exceeding ten (10) years before disposing of the same. This request is not mandatory, however, but is discretionary upon the part of my trustee, and if the legatees, entitled to the residuary estate, consent in writing, the trustee shall sell the remaining real estate at such time as may be agreed upon by the legatees entitled to the proceeds thereof."

The residuary estate consists of 300 shares of capital stock, without par value, of Belfont Realty Company, Inc., comprising all its outstanding stocks. This company owns certain valuable real estate in the so-called Grand Central Zone. By paragraphs 5 and 6 of the will testatrix created two trusts of $10,000 each, naming the executor as trustee thereof.

"*Fifth.* I give and bequeath to my trustee, hereinafter named,

the sum of Ten thousand dollars ($10,000) in trust, nevertheless, to invest and reinvest the same, and collect the interest, income and profits therefrom, and to pay the net income to my grandson, Raymond Currier, in quarter annual payments, until he shall become twenty-five years of age, and upon arriving at that age, to pay over to him the principal of said trust fund, together with any accrued income thereon, to become his absolutely.

" In the event that my said grandson, Raymond Currier, dies before arriving at the age of twenty-five years, leaving issue, then I give and bequeath the principal of said trust fund to his surviving issue, share and share alike.

" In the event that my said grandson, Raymond Currier, shall die before reaching the age of twenty-five years, leaving no issue, then I give and bequeath the principal of said trust fund, together with any accrued income thereon, to my son, Arthur B. Currier, and if he be not living, then to my next of kin under the laws of the State of New York.

" *Sixth.* I give and bequeath to my trustee, hereinafter named, the sum of Ten thousand Dollars ($10,000) in trust, nevertheless, to invest and reinvest the same, and collect the interest, income and profits therefrom, and to pay the net income to my granddaughter, Lorane Currier, in quarter annual payments, until she shall become twenty-five years of age, and upon arriving at that age, to pay over to her the principal of said trust fund, together with any accrued income thereon, to become hers absolutely.

" In the event that my said granddaughter, Lorane Currier, dies before arriving at the age of twenty-five years, leaving issue, then I give and bequeath the principal of said trust fund to her surviving issue, share and share alike.

" In the event that my said granddaughter, Lorane Currier, shall die before reaching the age of twenty-five years, leaving no issue, then I give and bequeath the principal of said trust fund, together with any accrued income thereon, to my son, Arthur B. Currier, and if he be not living, then to my next of kin under the laws of the State of New York."

The demand of legatees Campbell and Lloyd that there be an immediate distribution of the assets of the residuary estate, to wit, the shares of stock in said corporation in kind between the three residuary legatees, is met by the contention of legatee Currier, their brother, that their demand is in conflict with the expressed intention of the testatrix as stated in the will that the real estate shall be held by the executor and disposed of at such times as such executor may deem advantageous and for the best interests of the estate; that testatrix also indicated that in her opinion it would be

advantageous to withhold the sale of such real estate for a period of ten years and expressed her wish and desire that the sale be accordingly delayed; that this wish and desire, however, are not mandatory upon the executor but entirely discretionary. The legatees Campbell and Lloyd reply that the estate in fee created by paragraph 11 of the will cannot be cut down or limited by a subsequent clause unless it is as clear and decisive as the language of the clause which devises the estate; that clause 12 unlawfully suspends the ownership of the shares of stock of Belfont Realty Company, Inc.; that the suspension is for a period exceeding the time allowed by the statute; that the clause unlawfully attempts to create a trust for a term of years; that the provisions of the will do not create a valid power to sell the real property the exercise of which can be withheld for ten years. The answer of the legatee Currier to these claims may be summarized as follows: (1) That there is no element of invalidity in the provisions of the will; (2) that the provisions of the will as to the power of sale vested in the executor, subject to the unanimous consent of the residuary legatees, being valid, there is no basis or justification for any distribution in kind of the assets of the residuary estate prior to such sale as provided for by the will.

I hold (1) that the principle of law cited by legatees Campbell and Lloyd, that an estate in fee created by a will cannot be cut down by a subsequent clause unless it is as clear and decisive as the language of the clause which devises the estate, has no application to the instant case for the reasons (a) that there is in fact no cutting down or limitation of the estate devised in paragraph 11 by the provisions of paragraph 12 (*Crittenden* v. *Fairchild,* 41 N. Y. 289); (b) there is in fact no uncertainty or ambiguity in the language used in paragraph 12; (c) there is no repugnance between paragraph 12 and paragraph 11.

I further hold (2) that there is no element of invalidity in the will for the reasons asserted, since (a) there is no language in the will which creates an unlawful suspension of the absolute ownership in personal property or of the power of alienation of real estate, and moreover (b) there are persons in being by whom an absolute estate in possession can be conveyed. (*Sawyer* v. *Cubby,* 146 N. Y. 192; *Murphy* v. *Whitney,* 140 id. 541, 545, 546; *Williams* v. *Montgomery,* 148 id. 519; *Robert* v. *Corning,* 89 id. 225; *Henderson* v. *Henderson,* 113 id. 1; *Deegan* v. *Wade,* 144 id. 573; *Chanler* v. *New York El. R. R. Co.,* 34 App. Div. 305; *Dillenbeck* v. *Dillenbeck,* 134 id. 720.) Commenting upon several of the cases above cited, the Court of Appeals (245 N. Y. 478, 483, opinion by O'BRIEN, J.) stated: " In *Robert* v. *Corning* (89 N. Y. 225) executors possessed unqualified power to sell at any

time within three years after the death of the testator and were under compulsion to do so. Not only was such authority conferred, the duty to exercise it was enjoined in peremptory language. The only discretion left to them was the right to postpone the sale for three years. We held that even in the absence of any provision in the will, the executors would have had a reasonable discretion as to the time of sale to be exercised in view of all the circumstances. There was an imperative obligation to sell by the end of three years and a discretionary power to sell sooner. These combined elements rendered certain a reasonably early sale. When trustees are prohibited from alienating, even for a short term, the trust is void. We enforced that rule in a case where the power was suspended for four years (*Garvey* v. *McDevitt*, 72 N. Y. 556). In *Henderson* v. *Henderson* (113 N. Y. 1) no trust was created. The real estate was devised to the testator's children who took their interest at his death. A duty to sell, similar to that in *Robert* v. *Corning* (*supra*), was imposed upon the executor. He was allowed in his discretion to postpone the sale for five years, but during that time the children, all of full age, could have united with him in a conveyance. In *Deegan* v. *Wade* (144 N. Y. 573) a testator who died in October, 1890, gave an imperative power to sell to his executor with a direction that it be executed in the spring of 1891. This instruction, instead of postponing, facilitated the sale and amounted to nothing more than a request that it be made at a date earlier than the expiration of the ordinary period of administration."

The Appellate Division, Second Department (*Epstein* v. *Werbelovsky*, 193 App. Div. 428, 432), held: " The trustees have the power to convey. ' The absolute power of alienation is suspended, when there are no persons in being by whom an absolute fee in possession can be conveyed.' (Real Prop. Law, § 42.) Hence, it follows that ' where there are living parties who have unitedly the entire right of ownership, the statute has no application.' (*Williams* v. *Montgomery*, 148 N. Y. 519; *Spitzer* v. *Spitzer*, 38 App. Div. 436; *Wells* v. *Squires*, 117 id. 504; 191 N. Y. 529; Chapl. Susp. Alien. [2d ed.] §§ 39-43.) "

(3) I further hold that no trust was intended by testatrix nor was one created, but a power in trust was given by testatrix to her executor. Legatees Campbell and Lloyd seek to oppose the proposition that a valid power in trust was created by asserting that while a power of sale of the real estate was granted in the will, the real property in question was not owned by the testatrix but by the corporation and that it is not possible to create a valid power to do something in regard to property which the testatrix herself could not

have done; that the fact that she owned a majority of the shares of the capital stock of the corporation which owned the property makes no difference since section 131 of the Real Property Law defines a power as an authority to do an act in relation to property which the owner granting the power might himself lawfully do. This attempt to to make a distinction between the stock of the corporation wholly owned by testatrix and the real estate which was owned by the corporation and the conclusions drawn from the distinction are without force. The testatrix's intention to devise the real estate and to create a power in trust is dominant over the technical legal form through which she owned such real estate. (*Matter of Winburn*, 136 Misc. 19; *Matter of Foley*, 132 id. 332; *Matter of Friedman*, 177 App. Div. 755; *Matter of Cartledge*, 118 Misc. 131; affd., 203 App. Div. 899; affd., 236 N. Y. 515; *Matter of Bush*, 124 Misc. 674; *Matter of Brown*, 130 id. 865; modified, 225 App. Div. 759; modified, 252 N. Y. 366.) This principle was clearly expressed by my colleague, Surrogate FOLEY, in the above-cited case (*Matter of Bush*, 124 Misc. 674). " The testator's intention to give the stock represented by the certificates to the legatee is conceded by all the parties interested. But it is contended that there was a failure of the gift because the stock was the property of the corporation and not of the decedent. It is evident from the testimony that the corporation was maintained by the decedent for convenience in his financial operations * * *. To declare the bequest invalid would require the application of highly technical rules. In construing similar provisions contained in wills the courts have regarded the substance of the gift rather than the words of description. Moreover, exceptions to the doctrine of separate corporate entity have been made in order to sustain the gift." Proceed accordingly.