In the Matter of the Estate of GRACE BRADLEY WALTERS, Deceased.

Surrogate's Court, Nassau County, October 10, 1939.

*Larkin, Rathbone & Perry,* for Wirt P. Marks, as temporary administrator and as executor, etc.

*Buchdahl & Lempel,* for Richard Coleman Bradley, residuary legatee and distributee.

*William Joachim,* for Margaret A. Weldon Law.

*Frank W. Harris,* for John R. Carter and Robert E. Walters.

*John G. Saxe,* for the Trustees of Columbia University.

*L. Kingsley Smith,* special guardian.

*Van Ness & Van Ness,* for Thomas S. Hoey.

*A. Perry Osborn,* for Gertrude T. Cooper and others, as trustees under the will of Charles Cooper, deceased.

HOWELL, S. Construction is sought of certain provisions of testatrix's will. She was a layman and prepared and executed the will herself without the benefit of legal advice.

With respect to the legacy of $100 to Mrs. Waddell, it does not appear to be questioned that, she having predeceased the testatrix, the legacy to her lapsed and falls into the residuary estate.

Nor does there seem to be much question with respect to the legacy to John Alsop Davis. The testatrix gave $1,000 each to four named persons, including John Alsop Davis, but, following the legacy to him, he being an infant, she added the words " to be held in trust until he is sixteen years old." It is quite doubtful whether there was any intention by the testatrix to create any trust whatsoever, but, even if that intention existed, the result was nugatory because the trust, if created, would be a passive one with no trustee named and would not be valid. It follows that the legacy vested

in and is payable to the guardian of John Alsop Davis, as and when he shall be appointed and duly qualify.

The testatrix bequeathed a legacy of $1,000 to the " Cancer Research." The executor has been unable to find any corporation or organization of that name. He does, however, find an organization entitled " Institute of Cancer Research," an unincorporated body connected with Columbia University in the City of New York. He has also found that the director of that institute, Dr. Francis Carter Wood, had treated the decedent's husband, and found a canceled check of the deceased payable to his order.

The intention to make a gift for charitable purposes is clear from the bequest, and the courts will give that intention effect whenever possible by applying the most liberal rules of construction which the law will permit. Where it is clear that a testator had in mind that his bequest should be devoted to a clearly defined purpose, his language should be construed in a broad and liberal spirit, in accordance with his intention, and his gift upheld. (*Matter of MacDowell*, 217 N. Y. 434; *Butterworth* v. *Keeler*, 219 id. 446; *Matter of Robinson*, 203 id. 380; *Matter of Cunningham*, 206 id. 601; *Matter of Frasch*, 245 id. 174; *Matter of Durbrow*, Id. 469; *Manley* v. *Fiske*, 139 App. Div. 665; affd., 201 N. Y. 546; *City Bank Farmers Trust Company* v. *Arnold*, 268 id. 297; *Matter of Davidge*, 200 App. Div. 437; *Matter of Judd*, 242 id. 389; affd., 270 N. Y. 516.)

This court had occasion, in *Matter of Tiffany* (157 Misc. 873), to consider this question and, after a study of the authorities above cited, said (at p. 882): " Thus, the declared public policy of the State is that of a generous attitude toward charitable trusts. This attitude has been adopted by the courts and they have consistently applied the policy of liberal construction to charitable bequests."

The will now under consideration should be liberally construed. It should be borne in mind that it was drawn by a layman without legal advice. This court is satisfied that decedent intended a gift to the Institute of Cancer Research and that the use of the abbreviated form should be treated as a misnomer. Such a charitable bequest should not be defeated because of a misnomer. (*Lefevre* v. *Lefevre*, 59 N. Y. 434; *Matter of Durbrow, supra; Manley* v. *Fiske, supra; Kernochan* v. *Farmers' Loan & Trust Co.*, 187 App. Div. 668; affd., 227 N. Y. 658; *Matter of Patterson*, 139 Misc. 872, 875.)

The corporate purpose and objects of the Institute of Cancer Research are those called for by the descriptive name given by the testatrix in making the bequest. The similarity of names and the extrinsic facts make it quite proper to construe the bequest as a gift to the Institute of Cancer Research.

The fact that that institute is not incorporated does not invalidate the bequest. (*Kernochan* v. *Farmers' Loan & Trust Co., supra.*)

Nor does the failure to create a trust or name a trustee have any such effect or prevent the application of the *cy pres* doctrine. A trust is almost inseparably involved in a gift for charitable uses and the statute provides for the case of failure to name a trustee as well as for that of indefiniteness of beneficiary. The institute, although unincorporated, is a part of Columbia University and that university is an appropriate agency to carry out the testatrix's purposes and is a " medium best adapted to accomplish the end sought." (*Bowman* v. *Domestic & Foreign Missionary Society*, 182 N. Y. 494; *Matter of Durbrow, supra; Matter of Patterson, supra; Prudential Ins. Co.* v. *New York Guild*, 252 App. Div. 493.)

Columbia University may, therefore, take the bequest as trustee for its Institute of Cancer Research, to be held by the university, in trust, for the purposes of the gift.

The testatrix bequeathed " the business of Edgar B. Walters Organization to the help now running the same 5/27/35 with the except of accountant Mr. Martucci." Proof was taken by the court for the purpose of determining who were the help running the Walters Organization on May 27, 1935. It was clear that the testatrix intended to make a gift of the business to them as of that date, which was the date of the execution of her will. The Edgar B. Walters Organization is a corporation. At the time of the execution of the will and, also, at the time of her death, decedent owned 448 of the 500 shares of capital stock of the corporation. Of the other fifty-two shares, twenty-three were owned by an old salesman of the corporation, Mr. Price, twenty-three by Thomas S. Hoey and the other six were in the corporation's treasury. Thus, although the testatrix did not literally own " the business " of the organization, she did own ninety per cent of its stock. It had been founded by her husband and he was its active head until his death in December, 1934, after which the testatrix became its president, she receiving most of the stock of the corporation from her husband's estate. Upon the proof adduced, it appeared that the only persons, other than the testatrix, connected with the corporation and business on the date in question were Margaret A. Weldon, Robert E. Walters, John R. Carter, Thomas S. Hoey and James T. Hoey. I am satisfied that the testatrix intended to give the business to the four first named above and that the fifth named above, to wit, James T. Hoey, who is a son of Thomas S. Hoey, should not be considered as, at that time, he was a minor attending school but doing small part-time work for the business in a very minor capacity. The first question, obviously, is whether the gift is a valid bequest of the stock, as it was that which the decedent really owned rather than the business itself. It is her intention that should control and, in seeking

that intention from the will and the surrounding circumstances, it should again be remembered that she was a layman and drew the will herself without benefit of legal advice. The corporate entity had been owned substantially by her husband during his lifetime and was owned by her after his death. It was, apparently, a family business and incorporated merely for convenience. Hence, we should not construe the word " business " strictly or technically. Considering, also, the fact that the gift was to those running the business, it is clear that she meant to leave the business to them and that could mean only the gift to them of her stock in the corporation. This is a case where the corporate entity should be disregarded. (*Matter of Cartledge*, 118 Misc. 131; affd., 203 App. Div. 899; affd., 236 N. Y. 515; *Matter of Currier*, 138 Misc. 372; *Matter of Winburn*, 136 id. 19.) The court, therefore, holds that the gift of the business of the Walters Organization was a gift of the decedent's stock of the Walters Corporation, in equal shares, to Margaret A. Weldon, Robert E. Walters, John R. Carter and Thomas S. Hoey.

Still another question is presented with respect to this bequest. Is it a gift to a class so that, should one be unable to take, his shares would go to the others of the class, or is it a gift to the persons named individually so that, if the gift to one failed, it would pass into the residuary estate? This question arises because of the possibility presented that either Margaret A. Weldon or Robert E. Walters, or both, might be unable to take because, although legatees, they were also subscribing witnesses to the will.

A bequest is not a gift to a class where, at the time of making the will, the number of the donees is certain and the share each is to take is also certain and in no way dependent upon the members who shall survive. On the other hand, a gift is a gift to a class when it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at some future time, the share of each being dependent, for its amount, upon the ultimate number of members. (*Herzog* v. *Title Guarantee & Trust Company,* 177 N. Y. 86; *Matter of King*, 200 id. 189.)

Thus, where the gift is to persons by name or who are so described as to be fixed at the time of the gift so that there can be no fluctuation, then, if one predeceases the testator, his share lapses. (*Matter of King, supra.*) That is exactly the case here. Although the legatees are not named, they are so described as to be fixed as of the date of the execution of the will and cannot fluctuate. Hence, if the legacy as to one of the four should lapse, it would pass into the residuary estate.

Thus, we reach the question of the effect upon the legacies to Margaret A. Weldon and Robert E. Walters of the fact that they

were the only subscribing witnesses to the will. Robert E. Walters testified to the probate of the will and Margaret A. Weldon did not. She was without the State of New York and could not be located by the proponent. The latter spent considerable time and effort in endeavoring to locate her, without success. He, therefore, applied for and obtained an order of the surrogate dispensing with her testimony and, upon the testimony of the other subscribing witness, Robert E. Walters, the will was admitted to probate. After its admission to probate, Margaret A. Weldon returned. It appears from her own testimony that, realizing that if she testified to prove the will she would lose her legacy, she absented herself from the State of New York to avoid being compelled to testify and did not return until after the will was admitted to probate.

A will must have at least two subscribing witnesses. (Dec. Est. Law, § 21.)

If a person is a witness to a will wherein any legacy is made to such witness " and such will cannot be proved without the testimony of such witness," the legacy is void and such person is compellable to testify as to the execution of the will as if the legacy had not been made. (Dec. Est. Law, § 27.)

Before a will can be probated, at least two subscribing witnesses must be produced and examined " if so many are within the State and competent and able to testify." (Surr. Ct. Act, § 141.)

Upon proof that Margaret A. Weldon could not be found within the State and, in fact, could not be located at all, an order was made dispensing with her testimony pursuant to section 142 of the Surrogate's Court Act. By that section, death, absence from the State or the fact that the witness cannot, with due diligence, be found within the State, when shown by affidavit to the satisfaction of the surrogate, authorizes the latter to make an order dispensing with the testimony of such a witness, or, where the witness is outside the State and can be located, authorizes the issuance of a commission to take her testimony. Where the testimony of a subscribing witness has been dispensed with by order and the other subscribing witness has been examined, the will may be admitted to probate.

In this case Margaret A. Weldon was not a non-resident of the State of New York. However, she left that State and remained outside of the State purposely during the attempted probate of the will, not returning until after its probate. She could not be located either within or without the State by the proponent and, therefore, a case was presented where the will could be probated without her testimony, and was so probated upon order of the surrogate dispensing with her testimony and taking that of the other subscribing witness, Robert E. Walters.

Unquestionably, Robert E. Walters cannot take his legacy under the will, as the will could not have been admitted to probate without his testimony and, indeed, was actually admitted to probate upon that testimony. It could, however, and actually was admitted to probate without the testimony of Margaret A. Weldon, and the question presented is whether her act in purposely secreting herself outside the State until the will was probated prevents her from taking the legacy to her under the will. She relies upon the strict provisions of section 27 of the Decedent Estate Law, which confines the loss of a legacy to a subscribing witness to a case where the will cannot be proved without the testimony of that witness. Concededly, in this case, the will could be and was proven without the testimony of Margaret A. Weldon. Counsel, in their briefs, have been unable to find any authority determinative of this point. Margaret A. Weldon urges that it should be borne in mind that the testatrix intended to benefit her by the legacy given her in the will and, as a layman, was, doubtless, ignorant of the effect upon the legacy of using Margaret A. Weldon as a subscribing witness to the will. That is, doubtless, true, but it is equally true, in the court's opinion, with respect to the other witness, Robert E. Walters. The difference in the behavior of Robert E. Walters and Margaret A. Weldon in the dilemma thus presented is striking. Robert E. Walters made no attempt to avoid his duties as a witness but, on the contrary, voluntarily placed himself in a position of losing his legacy in order that the will might be probated. Margaret A. Weldon, on the contrary, secreted herself at the possible cost of non-probate of the will in order to preserve her legacy. The situation is far from appealing to equity and to the conscience of the court. By virtue of the provisions of section 27 of the Decedent Estate Law, Margaret A. Weldon, by acting as subscribing witness to the will, took upon herself the duty of testifying to the execution of that will and, although the legacy to her is thereby void, she was nevertheless, " compellable to testify respecting the execution of the said will, in like manner as if no such devise or bequest had been made; " and she was not excused from so testifying by the fact that the will contained a provision beneficial to her. (Dec. Est. Law, § 27.) When the will was executed and at the time it was offered for probate, Margaret A. Weldon was a competent person and a resident of the State of New York. She was thus compellable to testify to the execution of the will. Process was issued for the purpose of producing her as such witness to give such testimony but could not be executed because Miss Weldon purposely secreted herself and avoided such service in order to avoid the giving of her testimony. She thus evaded or attempted to evade the performance

of a duty imposed upon her by the statute. By such wrongdoing on her part she surely cannot have placed herself in any better position than she would have been had she remained in the State of New York and accepted service of a subpœna to testify as a subscribing witness to the will. In that case she would have been bound to appear and testify. Had she so appeared and had her testimony been adverse to the proponent, the court could, nevertheless, have admitted the will to probate upon the testimony of the other subscribing witness. It would seem, also, that, had she thus been subpœnaed and appeared to testify but had refused to testify, the result would have been the same.

I do not think the meaning and intent of section 27 of the Decedent Estate Law, containing the words " cannot be proved without the testimony of such witness," should be taken as referring to the theory of proving a will because the result would be that, in no case, would a gift to one of the attesting witnesses be invalidated because, under the statute, the will can be proved without the testimony of that witness where he has appeared and testified against the instrument or has refused to testify or has absented himself from the State so that he could not be found and brought in to testify.

It is not questioned, in this case, that the will was properly executed and that Miss Weldon acted as a witness thereto and that, but for her own wrongful act, she could have been produced as a witness and would have testified to its execution. Inasmuch as she is compellable to testify to its execution, she cannot escape that duty by her own wrongful act and, at the same time, by that act, take the benefit of the legacy in the will.

The conclusion of the court is that Margaret A. Weldon is in no better position than had she been subpœnaed or brought in to testify as a witness to the execution of the will and had so testified   Consequently, under the statute, the legacy to her in the will lapses and falls into the residuary estate.

Submit decree.