In the Matter of the Will of CHARLES E. HOHN, Deceased.

Surrogate's Court, New York County, January 28, 1943.

*Albert Blumenstiel* for Nicholas Kolman, petitioner.

*Hyman Jacobs* for Bessie Brand, respondent.

*Richard Steel* for Hans Hohn, respondent.

*Edward M. O. Pratt,* Office of Alien Property Custodian, for Francis Olivio & Company and others, respondents.

Foley, S.   In this proceeding for the construction of the will of the decedent, various questions have been raised by the petition of the administrator *c. t. a.* and the answers of the respondents.   The principal question involves the validity of certain bequests made to Bessie Brand who was a subscribing witness to the will.

The will was drawn by the testator.   He used a stationer's form, writing the dispositive provisions in his own hand.   He was not a lawyer.   Both in the attempted expression of his purpose and intent and in the mechanical details of execution, he betrayed inexperience and lack of familiarity with the law, with the result that extensive litigation has ensued.   Most serious of all, he chose as subscribing witnesses three persons, each of whom was to receive substantial legacies under the terms of his will.   They were employed in the business conducted by him.

Again—though it is of small importance here—subsequent to the execution and publication of the will, he attempted to revoke all legacies to one of the witnesses by an unattested alteration on the face of the will.   He crossed out the name of Bessie Brand, his former secretary, wherever it appeared in the body of the will.   He then added, immediately after the last legacy, the words: ''In as much as Bessie Brand left my employ she is

out of this testament.'' The testator signed his name and dated it. Since the alteration was made subsequent to the execution of the will and lacked the necessary statutory formalities, the will was admitted to probate in its original form without the alterations. (*Matter of Tremain,* 282 N. Y. 485; *Lovell* v. *Quitman,* 88 N. Y. 377; Decedent Estate Law, § 34.)

If the purpose of the testator in this respect is realized and the legacies to her declared forfeited, the result will come in a manner wholly unanticipated by the testator and by the application of principles of law of which he seemed wholly ignorant.

Shortly after the death of the decedent the executor nominated in the will filed a petition for its probate. The subscribing witnesses to the propounded paper were Bessie Brand, Nicholas Kolman and Hans Hohn. The petition showed that the person last named was in the armed forces of the United States, serving outside the State of New York.

Subpoenas were issued to the other two subscribing witnesses. After diligent efforts the proponent was unable to effect service upon Nicholas Kolman or to ascertain his whereabouts. Upon proof of the appropriate facts, an order was signed by the Surrogate dispensing with the testimony of Kolman and Hohn pursuant to the provisions of section 142 of the Surrogate's Court Act.

Bessie Brand appeared as a witness. In her examination she was represented by her counsel. That she was sensible of the fact that the bequests to her were in danger of forfeiture is clearly evident. Although she was unable to adopt the course which she charges the witness Kolman pursued, and to flee the jurisdiction before the service of subpœna, she was, nevertheless, equally resourceful.

In her testimony in the probate proceeding she attempted to vindicate her theory that her legacies would not be invalidated under the terms of section 27 of the Decedent Estate Law if she could establish a defective execution of the will insofar as her attestation was concerned and a valid execution with respect to the other two witnesses.

She admitted that her signature appeared twice on the propounded paper, once immediately underneath the printed word ''Witness,'' and again directly beneath a printed attestation clause. Her address was written opposite her name in the latter place. However, she testified that the decedent merely handed the paper to her with a request to sign ''here and here ''; that he never told her the nature of the paper; and that no other persons were present at that time. She further stated

that she did not know at the time that the instrument was decedent's will. She could not say whether decedent's signature appeared on the will at the time she signed it. Neither of the other two subscribing witnesses, she testified, signed the will in her presence.

Mrs. Brand identified the signature of the testator and his handwriting in the will. She testified positively that, on the day the will was executed, the decedent was possessed of his normal faculties, was capable of making a will and that he acted of his own volition and was not under any restraint. She identified the signatures of the other two subscribing witnesses to the will.

The proponent produced evidence which clearly and convincingly demonstrated that Mrs. Brand had testified falsely in respect of certain facts attending the execution of the will. The credible evidence established the valid execution of the will by the testator and compelled the conclusion that the character of the instrument had been made known to the three subscribing witnesses; that the three witnesses had signed it in the presence of each other; and that its execution had been duly acknowledged by the decedent.

It has long been the rule in this State that the due execution of a will may be established by competent evidence, even against the positive evidence of the subscribing witnesses. (*Trustees of Auburn Seminary* v. *Calhoun*, 25 N. Y. 422 and note; *Peck* v. *Cary*, 27 N. Y. 9; *Matter of Cottrell*, 95 N. Y. 329; *Matter of Hunt*, 110 N. Y. 278; *Matter of Katz*, 277 N. Y. 470; *Matter of Ewen*, 206 App. Div. 198; *Matter of Weber*, 175 Misc. 595.) The rule has been embodied in our statutory law. (Surrogate's Ct. Act, § 142.) It had previously been applied by the courts "by force of adjudication alone." (*Matter of Cottrell, supra.*) "Both of those witnesses must be examined, but the will may be established, even in direct opposition to the testimony of both of them." (*Trustees of Auburn Seminary* v. *Calhoun, supra,* at p. 425.)

Upon the entire record in the probate proceeding, the Surrogate was satisfied that the will had been validly executed. The will was accordingly admitted to probate. (Decedent Estate Law, § 21; Surrogate's Ct. Act, § 142.)

Since Bessie Brand had been examined as a witness in the probate proceeding, the administrator *c. t. a.* seeks instructions in the present proceeding as to whether the bequests to her had become forfeited under the provisions of section 27 of the Decedent Estate Law. That section, insofar as material here,

provides that if any person shall be a subscribing witness to the execution of any will wherein any legacy "shall be made to such witness, and such will can not be proved without the testimony of such witness, the said devise, legacy, interest or appointment shall be void, so far only as concerns such witness * * *." An amendment to the section made in 1942 (ch. 622) became effective after the date of the decedent's death and is not relevant here.

It is the contention of Mrs. Brand that the will was "proved without the testimony of such witness," and that as a consequence the legacy to her is valid. This contention is wholly lacking in merit and is overruled. The Surrogate holds that the will could not be proved without her testimony and that the legacies to her are void. (Decedent Estate Law, § 27; *Matter of Walters*, 285 N. Y. 158, 160; *Matter of Dwyer*, 192 App. Div. 72; *Matter of Brown*, 31 Hun, 166.)

The argument of the respondent is based upon the assumption that the Surrogate had accepted as true all of her testimony in the probate proceeding; that he was satisfied that Mrs. Brand did not know that it was a will that she was witnessing; that the other subscribing witnesses were not present when she attested it; and that the decedent had not signed it in her presence or acknowledged it as his signature. As stated above, her assumption in that respect is erroneous. Had the Surrogate accepted as true her version of all of the circumstances surrounding her attestation of the instrument, the will would not have been admitted to probate without the examination by personal appearance or deposition of either or both of the other two subscribing witnesses. The independent evidence produced by the proponent, as well as the character of Mrs. Brand's own testimony, conclusively established the falsity of her testimony insofar as it showed defective execution of the will, and conclusively showed a valid execution in the presence of all three subscribing witnesses.

Moreover, certain of the testimony elicited from Mrs. Brand proved the testamentary capacity of the decedent, his freedom from coercion and restraint, the genuineness of his signature and handwriting and the signatures of the other two subscribing witnesses. These are all matters which were required to be established to the satisfaction of the Surrogate before probate is granted. (Surrogate's Ct. Act, § 144.)

The importance of Mrs. Brand's testimony was recognized by her as well as by the proponent. After the examination of the available witnesses was concluded, a written stipulation was executed by the attorneys for the proponent and the attorneys for Mrs. Brand. It was stipulated and agreed that the proceed-

ing " may be submitted to the Court upon the written deposition of Bess Brand and the written deposition of " a witness produced by the proponent. Mrs. Brand's interest in the probate of the will is evident for she could not become entitled to receive any part of this estate except in her status as legatee under the will. The stipulation executed on her behalf by her attorneys thus becomes very significant.

The will of this decedent could not be proved without the testimony of Mrs. Brand. Section 141 of the Surrogate's Court Act provides: "Before a written will is admitted to probate, two, at least, of the subscribing witnesses must be produced and examined, if so many are within the state, and competent and able to testify." Although the valid execution of the will may be established by other competent evidence the Surrogate is required to follow the procedure prescribed by the statute. This duty on the part of the Surrogate has been consistently affirmed by the courts. (*Trustees of Auburn Seminary* v. *Calhoun*, 25 N. Y. 422, *supra; Matter of Sizer*, 129 App. Div. 7, affd. 195 N. Y. 528; *Matter of Eysaman*, 113 N. Y. 62, 75; *Matter of Huber*, 181 App. Div. 635.)

In *Matter of Sizer, supra,* the rule was clearly expressed by Mr. Justice GAYNOR: "In the trial of an action a will, *i. e.,* that the statutory formalities were complied with, may be proved by any competent evidence, direct or circumstantial, subject to its admissibility under the common law rules of evidence. But on probate the Surrogate has to follow the method of proof prescribed by statute (Code Civ. Pro. § 2618). He must examine at least two subscribing witnesses to the will, excepting witnesses shown to be dead, absent from the state, insane or otherwise incompetent." (129 App. Div. 7, 9.)

Mrs. Brand was a subscribing witness to the will. Being a resident of the State and not under any disability, she was of necessity called as a witness, sworn and duly examined, pursuant to the mandate of the statute. (Surrogate's Ct. Act, § 141.) Under the circumstances of this case, her testimony was an indispensable prerequisite for probate of the will, and all legacies to her under the will are consequently void. (Decedent Estate Law, § 27.)

The fact that the witness gave testimony against the due execution of the will rather than in its favor does not make her legacies valid. Deception cannot preserve for her that which honesty and frankness would have rendered void. Had she testified truthfully, no semblance of an argument could be made against the forfeiture of her legacies. No other course of con-

duct could make her position stronger. The weakness of the argument of the respondent was pointed out long ago in *Matter of Brown* (31 Hun, 166). In that case the two witnesses to the will were also executors and residuary legatees. Both were examined upon the proof of the will. The General Term said: "The will could not be proven without the testimony of Brown. Two witnesses at least are required to a will. This probate required both witnesses to be produced and examined. Two at least of the witnesses to such will, if so many are living in this State, and of sound mind, and are not disabled from age, sickness or infirmity from attending, shall be produced and examined. (4 R. S. [Edm.] 488, § 10.) As to Brown, the legacy was void. A surrogate may believe one witness and not the other, and thus it is claimed that a will can be proven without two witnesses in fact. The statute does not mean this. A will must have two witnesses, and both must be sworn to prove it, with certain exceptions, which do not include the present case. The testimony of the witness, of necessity, must be given; the will cannot be proven without it, and the legacy consequently is void."

The decision in *Matter of Walters* (285 N. Y. 158) does not support the argument of the respondent. On the contrary, it supports the principle that a witness who gives testimony on the probate of the will forfeits her legacy.

In that case, as in the pending proceeding, the subscribing witnesses were legatees under the will. There, as here, only one subscribing witness was examined in the probate proceeding. In the *Walters* case there were two subscribing witnesses to the will. One of them had left the State and remained away until after the will was probated. Her testimony was dispensed with under the terms of section 142 of the Surrogate's Court Act. The other witness appeared and was examined. The Surrogate in that proceeding held that both of the witnesses had forfeited their legacies and his determination was affirmed by the Appellate Division. In the Court of Appeals, the only question considered was whether the witness who was *not* examined had disqualified herself from receiving her legacy. The Court of Appeals disagreed with the lower courts only as to the legacy of the absent witness. There was no disagreement as to the forfeiture of the legacy of the witness who *was* examined.

The Surrogate, therefore, holds that every bequest to Bessie Brand contained in the will of the decedent is void. (Decedent Estate Law, § 27.)

On the further questions of the construction of the will, the following dispositions are made:

(1) The specific bequest of the business to Hans Hohn, Bessie Brand and Nicholas Kolman was intended by the testator to include the stock of the corporation conducted by him at the address given in the will. (*Matter of Bush,* 124 Misc. 674; *Matter of Cartledge,* 118 Misc. 131, affd. 203 App. Div. 899, affd. 236 N. Y. 515; *Matter of Manning,* 232 N. Y. 512; *Matter of Bauer,* 289 N. Y. 326; *Matter of Burr,* 175 Misc. 725; *Matter of Walters,* 172 Misc. 207, affd. 259 App. Div. 1078, modified on other grounds and affirmed, 285 N. Y. 158.) I have held that this legacy has lapsed as to Bessie Brand. As to the other named legatees, the bequest necessarily included. the bank account maintained in the name of the corporation as a part of these assets. It also included the business maintained by the testator in his individual name at the same address set forth in the will together with all of its assets and subject to its liabilities for bills payable or other debts. I hold further that the testator intended that the bank account maintained by him in the Bank of the Manhattan Company in connection with such individual business was to be treated as part of the bequest. It is therefore payable to the two persons entitled to receive the specific legacy. (*Matter of Lowe,* 206 N. Y. 671, mdfg. 149 App. Div. 347; 2 Davids, N. Y. Law of Wills, p. 1255; *Matter of De Witt,* N. Y. L. J., November 29, 1929, p. 1056; *Matter of Johnson,* 167 Misc. 588.)

(2) Since Bessie Brand is found disqualified by me from receiving any benefit under the will, the bequest of the business, as construed by the Surrogate, vested in two of the three legatees, Hans Hohn and Nicholas Kolman. The one-third share bequeathed to Bessie Brand lapsed. Since there is no effective general residuary clause such one third passed by intestacy to the next of kin of the testator.

(3) A specific bequest of certain life insurance in the sum of $10,000 was given to Hans Hohn " less loan against this particular policy. (Loan $6000)." The loan made by a bank was actually made on the security not only of this policy but of two other policies which were specifically bequeathed to other persons. In view of the direct command of the testator, however, the loan must be charged against the proceeds of the single policy given to Hans Hohn. Because of this mandate, the primary provisions of section 20 of the Decedent Estate Law, which would subject all three policies to an equitable contribution to the satisfaction of the loan, have no application

since the testator had otherwise directed. The direction in the will expressly declared the manner in which the loan was to be paid and the alternative provisions of section 20 therefore apply.

Necessarily, the bequest of the two other policies passed free from any charge or burden of the loan. The amount of the loan, which is now stated to be $6,100, must be paid out of the proceeds of the $10,000 bequeathed to Hans Hohn.

(4) As to the bank account maintained by the testator in his name as executor of the estate of his deceased wife, I hold that the balance passed to the group of her relations and of his relations named in the will in their respective proportions.

(5) No disposition can presently be made in respect of the legacy to Francis Olivio & Co., Como, Italy. The legatee is an Italian business corporation of which the decedent owned a majority of the shares of stock.

Under the law of the State of New York a domestic corporation has power to acquire personal property by bequest for its corporate purposes. (General Corporation Law, § 14, subd. 3; *Matter of Keene,* 152 Misc. 424.) This legatee, however, is an Italian corporation which conducts its business in Italy. The legal capacity of a foreign corporation to take a testamentary gift depends upon the law of the legatee's domicile, or State or country of incorporation. (*Matter of Huss,* 126 N. Y. 537, 544; *Hope* v. *Brewer,* 136 N. Y. 126, 140; *Matter of Idem,* 256 App. Div. 124, affd. 280 N. Y. 756.) "If the legatee, whether a natural or artificial person, and whether he takes in his own right or in trust, is capable, by the law of his domicil, to take the legacy in the capacity and for the purposes for which it is given, and the bequest is in other respects valid, it will be sustained, irrespective of the law of the testator's domicil." (*Chamberlain* v. *Chamberlain,* 43 N. Y. 424, 433.) Conversely, a testamentary bequest will lapse if the legatee is incapable of receiving it under the law of its domicile even though the bequest is valid under the law of the domicile of the testator. (*Chamberlain* v. *Chamberlain, supra; Matter of Huss, supra; Matter of Prime,* 136 N. Y. 347, 360; *Kerr* v. *Dougherty,* 79 N. Y. 327, 342; *Congregational Unitarian Society* v. *Hale,* 29 App. Div. 396, 400; 2 Beale on Conflict of Laws § 306.3.)

In the present proceeding it is impossible to determine whether the Italian corporation is still in existence and if so whether under the present law of Italy it has the legal capacity to take a testamentary gift. Determination of the validity of

the legacy must, therefore, await proper proof of these facts. If the named legatee is incapable of receiving the bequest, the property may pass to the statutory distributees of the decedent as intestate property. If the corporation is qualified to take, the bequest may be required to be paid to the Alien Property Custodian.

The balance in the account bequeathed to this corporation must, therefore, be deposited in the City Treasury for the benefit of the persons who may be entitled thereto.

Submit decree on notice construing the will accordingly.